In the Matter of the Application of HILDA LOCKWOOD O'BRIEN, as Beneficiary Named in Application for Death Benefit Executed by JOHN F. O'BRIEN, Deceased, Petitioner, Appellant, against MORRIS S. TREMAINE, as Comptroller of the State of New York, Respondent, to Review the Determination of Said MORRIS S. TREMAINE, as Comptroller of the State of New York, Pursuant to Section 54, Subdivision 5, of Chapter 741 of the Laws of 1920, as Amended.*

Third Department, January 8, 1941.

* Affg. 175 Misc. 57.

*Heywood & Benedict [Royal E. T. Riggs, Elliot S. Benedict, W. L. L. Peltz* of counsel], for the appellant.

*John J. Bennett, Jr., Attorney-General [Joseph M. Mesnig, Assistant Attorney-General,* of counsel], for the respondent.

Order affirmed, without costs.

HILL, P. J., CRAPSER, BLISS and FOSTER, JJ., concur; HEFFERNAN, J., dissents, in an opinion.

HEFFERNAN, J. (dissenting). In deciding the question which this case presents we are confronted with a statute (Civil Service Law, art. 4) which might very well be characterized as a mere collection of words. It is difficult, if not impossible, to give it any precise or intelligible application in the circumstances in which it was intended to operate. Its terms are so vague and uncertain as to convey no definite meaning to those whose duty it is to execute it either ministerially or judicially. A statute must have a rational construction to be collected not only from the words used but from the policy which may be reasonably supposed to have dictated its enactment and the interpretation should be rigorous or liberal, depending upon the interests with which it deals.

An examination of the provisions of the statute with which we are dealing leaves no doubt that its purpose was to protect and reward servants of the State and their dependents. It is remedial legislation, beneficent in its scope, and must be construed liberally so as to afford all the relief within the power of the court which the language of the act indicates that the Legislature intended to grant. It makes provision for annuities, pensions and retirement allowances to those who comply with its terms (§ 50). Employees, in order to secure these benefits must be members of the Retirement System (§ 52). Members reaching the age of sixty years may retire for superannuation and may be granted an annuity and a pension (§ 63). For members under sixty years provision is made for ordinary disability retirement and accidental disability retirement. Liberal accidental death benefits are payable to beneficiaries and dependents of members (§ 65-a). Provision is also made for the payment of ordinary death benefits, under certain circumstances, to the estates of decedents or the nominees of such, who had been members of the Retirement System (§ 65-b). Liberal options upon retirement are available to members under certain conditions (§ 68). A member under sixty years of age may also elect to retire and receive a retirement allowance (§ 68-a).

The liberal rule of construction which must govern us in the interpretation of this statute leads to the inevitable conclusion

that its enforcement should carry into effect the will of the Legislature as expressed in its terms and give, not stintedly or parsimoniously, but freely and generously, all the statute purports to give.

There are no disputed questions of fact in this proceeding. John F. O'Brien was born on June 13, 1874. In 1898 he was appointed an assistant corporation counsel of the city of New York and served as such until January 25, 1927, at which time he was appointed an associate judge of the Court of Appeals, to which office he was elected in November, 1927, for a term of fourteen years, to expire on December 31, 1941. His death occurred on December 25, 1939.

On May 9, 1928, he became a member of the New York State Employees' Retirement System and continued as such until his death. In his application for membership he designated his wife, petitioner, as his beneficiary. When he became a member he paid contributions upon his service since 1921. He continued to make such payments from that time until his death when his total contributions amounted to $32,217.63.

Respondent concedes that petitioner is entitled to receive the sum of $44,717.63 in cash or in the form of an annuity, if desired, comprised of an ordinary death benefit of $12,500 (§ 65-b) and a refund of the judge's contributions of $32,217.63 (§ 61, subd. 2). Petitioner insists that under the option which her husband selected she is entitled to an annual payment of $9,495.45 during her natural life. The Special Term sustained respondent's contention and from that determination petitioner has come to our court.

In 1939 Judge O'Brien's health became seriously impaired and on November 21, 1939, he wrote a letter to Chief Judge Crane announcing his intention to resign from the court. On the same day, his secretary visited the office of the Retirement System requesting information on options which the judge might select on retirement. This request was acknowledged by letter from the Retirement System to the judge on November twenty-second, the day following the letter of retirement to Chief Judge Crane. A printed form accompanied the letter. That form is interesting as evidence of the confusion which the administration of the Retirement System has created. On one physical document is both the formal application for retirement, as well as the exercise of the option by the prospective pensioner or person retiring. In fact the form itself contains only a request for information as to the options which Judge O'Brien had already received by the letter of November twenty-second. The statute, it will be observed, as well as the form, and the Comptroller's instructions also, all regard the application for retirement and the exercise of the option as

two separate acts, the latter of which could be exercised at any time before the actual retirement date was reached. In his letter of November twenty-second to the judge the Comptroller expressly so stated as evidenced by the following excerpt: " It is not necessary for you to choose an option when you file your application for retirement. You should, however, for your protection and the protection of your beneficiary, choose an option not later than the day on which your retirement becomes effective."

An examination of the document executed by the deceased makes it abundantly clear that he exercised the request for information, and used the form as a formal exercise of the option, the second step in choosing the annuity to be applied to his case, either for himself or his widow. He named his widow as beneficiary under the option selected. On December 1, 1939, this document was filed with the Comptroller. Certain additional information, here unimportant, was asked concerning Mrs. O'Brien and was given. The Retirement System and the deceased both then apparently regarded everything necessary to be done to effect the retirement and option as having been done. The retirement date set was January 1, 1940. Before that date arrived, however, and on Christmas day death intervened.

Petitioner later applied for the benefits under the option exercised. Strange as it may appear and even before she had done so, a letter was transmitted to her from the Comptroller's office in effect refusing the prospective application for benefits. But, significantly enough, the letter sets forth as the reason for rejecting the retirement allowance selected by the deceased, not the reason labored and given as the basis for the decision in the court below, but the fact that the deceased had died " in service," i. e., before the effective date set by him for his retirement had taken place. It now appears that the Comptroller seeks to support his action by the belated contention that the application was not filed thirty days before the judge's death and that is the burden of the opinion below, as well as the ground for much of the Attorney-General's argument in the brief. This requires a glance at the statute itself, in order to seek justice out of its confusion.

Subdivision 2 of section 61 of the Civil Service Law, so far as pertinent, provides:

" 2. Should a contributor die before retirement, or within the thirty day period provided in section sixty-eight of this article, his accumulated contributions shall be paid to his estate or to such person as he shall have nominated by written designation duly executed and filed with the Comptroller.

" The contributor, or on the death of the contributor, the person nominated by him to receive his accumulated contributions, may provide by written designation duly executed and filed with the Comptroller that the above mentioned contributions shall be paid to the person designated in the form of an annuity, the amount thereof to be determined at the time of the member's death on the basis of the age of the beneficiary at that time as the actuarial equivalent of the accumulated contributions."

This is not so clear as the court below or the Comptroller would have us believe. Liberally construed, as this statute must be, it would certainly be subject to the construction that an alternative is here set forth. If the contributor does *not* die within the thirty-day period (§ 68) the fact that he died " in service," *i. e.*, " before retirement," as above provided, does not apply and the option, if exercised, is enforcible. In the case before us the deceased complied with every condition required by statute. Under the accepted doctrine of *Littlejohn* v. *Shaw* (159 N. Y. 188, at p. 191): " The principle is plain, and needs no argument in support of it, that if a particular objection is taken to the performance and the party is silent as to all others, they are deemed to be waived. This waiver of all other objections is not only justly inferable, generally, but is especially so, when, as under the circumstances present in this case, the deliberateness with which the objections are stated leaves it to be implied that there has been a consideration of the matter   *   *   *."

The Comptroller had stated as the sole basis for rejecting the claim — the death " in service." At a later date (May 29, 1940) after a hearing, he adds the reason of the thirty-day provision. That objection should not avail him to escape the effect of the principle above cited.

Furthermore, however, is the apparently independent force of section 68 dealing with " options." This has no reference to death " in service " and its provisions, if found to have been reasonably complied with, must govern. That section, so far as material, reads:

" § 68. Options. With the exception that no election of an optional benefit shall become effective in case a member dies within thirty days after the filing of an application for a retirement allowance, until the first payment on account of any benefit becomes normally due, the beneficiary, or if he is an incompetent, then his wife, or, if he has no wife, a committee of his estate, may elect to receive such benefit in a retirement allowance payable throughout life, or to receive the actuarial equivalent at that time of his annuity, his pension, or his retirement allowance in a lesser annuity

or a lesser pension or a lesser retirement allowance, payable throughout life, with the provision that: \* \* \*

" Option 2. Upon his death, his annuity, his pension, or his retirement allowance, shall be continued throughout the life of and paid to such person, having an insurable interest in his life, as he, his wife or committee so electing, shall nominate by written designation duly acknowledged and filed with the Comptroller at the time of his retirement.

" Option 3. Upon his death, one half of his annuity, his pension or his retirement allowance, shall be continued throughout the life of and paid to such person, having an insurable interest in his life, as he, his wife or committee so electing, shall nominate by written designation duly acknowledged and filed with the Comptroller at the time of his retirement."

In addition to what has already been said the first phrase of section 68 relating to the thirty-day provision is not applicable to the death or retirement of a sixty-year old member. Such a member, under sections 62 and 63, has an absolute right to retire and obtain the benefits therein specified. He is not required to make an application for a retirement allowance under section 68 because section 63 provides exactly what he shall get. Undoubtedly the object of the thirty-day period referred to in section 68 is to permit a retiring employee to ascertain from the Retirement System the terms upon which he may retire and to decide upon the option he will select. Surely it was never the intention of the Legislature in the enactment of this law to inject an equivocal proviso in order to trap the unwary.

The courts should not give the statute the technical construction urged by respondent. To adopt his view would result in grave injustice and work a forfeiture of petitioner's rights. This is not a case of death before the exercise of an option. In this case there was a substantial compliance with the statute. Reasonably and liberally construed, all the requirements of notice and time have been fulfilled. The death of Judge O'Brien more than thirty days after notice of retirement, and after the notification that the option could be exercised at any time before the actual date of retirement, taken with all the evidence in the case convinces us that we would be doing violence to a beneficent statute were we to deny its benefits to petitioner.

The order appealed from should be reversed and the prayer of the petitioner granted.